**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

THE FPE FOUNDATION,
        Plaintiff,

v.

MARTIN P. SOLOMON, as
co-trustee of the Qualified
Terminable Interest Property Trust,
LEWIS C. COHEN, as co-trustee
of the Qualified Terminable Interest
Property Trust, BETSY A. SOLOMON,
as trustee of the LLL&B Trust, and
J. ROBERT CASEY, individually.
        Defendants.

C.A. No. _____

**JURY TRIAL DEMANDED**

## COMPLAINT

The FPE Foundation (the "Foundation") files this Complaint against Martin P. Solomon ("Martin"), Lewis C. Cohen ("Lewis"), Betsy A. Solomon ("Betsy"), and J. Robert Casey ("Casey") in their capacities as stated in the foregoing caption.

## Parties

1. The Foundation is a Delaware nonprofit corporation with its principal place of business in New York. It owns, administers and controls the property and claims previously held in a charitable trust known as the Fund for Philanthropy and Education (the "Fund"), which was established by Maurice M. Cohen ("Maurice") under a Declaration of Trust dated as of April 30, 1982.

2. Martin is a citizen of Massachusetts.

3. Lewis is Martin's brother-in-law and a citizen of Massachusetts.

4. Betsy is Lewis's sister, Martin's wife, and a citizen of Massachusetts.

5. Casey is a Director at Goulston & Storrs, an attorney, a member of the Massachusetts bar, and, on information and belief, a citizen of Massachusetts.

## Jurisdiction and Venue

6. This Court has jurisdiction over this civil action under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and it is a dispute between citizens of different states.

7. Venue is proper in this Court under 28 U.S.C. § 1391 because it is the judicial district in which all of the Defendants reside, and it is the judicial district in which a substantial part of the acts or omissions giving rise to the Foundation's claims occurred.

## Facts

8. Under Article V of the "Maurice M. Cohen Revocable Trust" dated February 17, 1989 and amended as of May 6, 1993 (hereinafter, the "Maurice Revocable Trust"), a true copy of which is attached hereto as Exhibit 1, Marilyn A. Cohen ("Marilyn") was the lifetime beneficiary of the Qualified Terminable Interest Property Trust (the "QTIP Trust"), which held at least $6,000,000.00 of the Maurice Revocable Trust's assets and all of the Maurice Revocable Trust's real estate holdings.

9. In pertinent part, Article V of the Maurice Revocable Trust provides as follows:

> A. Commencing with the date of death of the GRANTOR, the TRUSTEE shall pay all the net income from the Qualified Terminable Interest Property Trust in convenient installments, but not less frequently that quarter-annually, to GRANTOR's spouse during GRANTOR's spouse's lifetime . . . .
>
> \*   \*   \*
>
> C. In the event that after GRANTOR's death the net income for this trust, together with income known to the TRUSTEE to be available to the GRANTOR's spouse from other sources, is determined by the TRUSTEE to be insufficient for GRANTOR's spouse's health, education, support and maintenance in accordance

with the standard of living enjoyed at the time of GRANTOR's death, the TRUSTEE is authorized, but not directed, in its sole discretion to use or expend for the benefit of GRANTOR's spouse so much of the trust principal, even to the exhaustion thereof, as is necessary to meet these ascertainable standards.

D.    During the lifetime of GRANTOR's spouse, the TRUSTEE shall not pay, distribute or use any of the principal or the net income from the trust to or for the benefit of any person or legal entity other than to or for the benefit of GRANTOR's Spouse.

10.    Under Article V, Section F of the Maurice Revocable Trust, whatever principal remained in the QTIP Trust following Marilyn's death was to pass, "together with any accumulated or accrued income," to the Fund.

11.    The Foundation is the Fund's successor-in-interest.

12.    Martin and Lewis are the QTIP Trust's co-trustees (the "QTIP Trustees").

13.    Irving Marcus ("Irving") was related to Marilyn through marriage. Irving was also Marilyn's accountant and tax advisor. He also advised Lewis, Betsy, and Martin in their various fiduciary capacities with respect to tax and accounting matters.

14.    Casey advised Marilyn regarding her estate planning and also advised her, Lewis, Martin and Betsy in their various capacities as fiduciaries of certain of the several trusts and other entities established by Maurice.

15.    Casey also advised Martin and Lewis how to redirect the remainder interest under the QTIP Trust away from the Fund.

16.    True copies of communications from Casey to Lewis, Betsy, Martin, and/or Irving concerning the disbursement of assets from the QTIP Trust away from the Fund are attached hereto as Exhibit 2, Exhibit 3, Exhibit 4, and Exhibit 5.

17. Martin and Lewis lacked authority under the QTIP Trust or the Maurice Revocable Trust to make many of the disbursements that they did out of the QTIP Trust and away from the Fund.

18. Casey, Lewis, and Martin knew or should have known that Martin and Lewis lacked authority under the QTIP Trust or the Maurice Revocable Trust to make many of the disbursements that they did out of the QTIP Trust and away from the Fund.

### A. The 32 Countryside Road Property

19. On information and belief, on or about June 21, 1996, Betsy, acting in her capacity as the trustee of the LLL&B Trust, sold a piece of real estate located at 32 Countryside Road in Newton, Massachusetts (the "32 Countryside Road Property") for approximately $700,000.

20. On information and belief, Marilyn had a life estate in the LLL&B Trust.

21. The QTIP Trust is or was a remainderman of the LLL&B Trust.

22. Neither the Foundation or the QTIP Trust has received any proceeds from the sale of the 32 Countryside Road Property.

### B. The Chestnut Hill Condominium

23. In addition to being QTIP Trustees, Martin and Lewis are or were also co-trustees of a nominee real estate trust known as the "Cohen Florence Nominee Trust," the original beneficiary of which was the QTIP Trust.

24. The Cohen Florence Nominee Trust held a condominium unit located on Florence Street in Chestnut Hill, Massachusetts (the "Chestnut Hill Condominium"), which the QTIP Trustees had purchased for Marilyn to live in following the sale of the 32 Countryside Road Property.

25. In August 2005, on information and belief, Martin and Lewis, acting in their capacities as QTIP Trustees and on the advice of Casey, assigned all beneficial interest under the Cohen Florence Nominee Trust from the QTIP Trust to Marilyn individually.

26. Martin and Lewis lacked authority under the QTIP Trust or the Maurice Revocable Trust to assign the QTIP Trust's beneficial interest in the Cohen Florence Nominee Trust to Marilyn individually.

27. Casey, Lewis, and Martin knew or should have known that Martin and Lewis lacked authority under the QTIP Trust or the Maurice Revocable Trust to assign the QTIP Trust's beneficial interest in the Cohen Florence Nominee Trust to Marilyn individually.

28. Contemporaneously, on information and belief, Casey advised Marilyn to establish a second and new real estate nominee trust with respect to the Chestnut Hill Condominium, which she did by instrument dated December 1, 2005 (the "2005 Nominee Trust"), that named Lewis and Betsy as the co-nominee trustees thereof.

29. Two months later, on or about February 1, 2006, Casey advised Marilyn to establish the Marilyn A. Cohen 2006 Irrevocable Trust (the "Irrevocable Trust").

30. On information and belief, Marilyn funded the Irrevocable Trust with her beneficial interests in the 2005 Nominee Trust.

### C. The Florida Condominium

31. On information and belief, the QTIP Trust may have purchased (or loaned money to purchase) a condominium unit located at the Sun Valley East Condominium, 9644 Sills Drive, Unit 40-102, Palm Beach, Florida (the "Florida Condominium").

32.  The Florida Condominium or the funds used to purchase the Florida Condominium are assets that should have passed through the QTIP Trust to the Foundation upon Marilyn's death.

### D. The Bent Street Limited Partnership

33.  On information and belief, upon Maurice's death in 1995, his interest in an entity known as the Bent Street Limited Partnership was transferred to the QTIP Trust with the consent of his partners.

34.  On information and belief, the surviving partners of the Bent Street Limited Partnership contemporaneously "preapproved" the transfer of the QTIP Trust's interests in the Bent Street Limited Partnership to the Fund upon Marilyn's death, as provided by the QTIP Trust or the Maurice Revocable Trust.

35.  Relying on advice provided by Casey, Martin and Lewis, acting in their capacities as QTIP Trustees, transferred Maurice's interest in the Bent Street Limited Partnership away from the QTIP Trust to avoid it passing to the Fund.

36.  Martin and Lewis lacked authority under the QTIP Trust or the Maurice Revocable Trust to transfer Maurice's interest in the Bent Street Limited Partnership away from the QTIP Trust to avoid it passing to the Fund.

37.  Casey, Lewis, and Martin knew or should have known that Martin and Lewis lacked authority under the QTIP Trust or the Maurice Revocable Trust to transfer Maurice's interest in the Bent Street Limited Partnership away from the QTIP Trust to avoid it passing to the Fund.

### E. Transfers of Other QTIP Trust Assets Before Marilyn M. Cohen's Death

38.     During the final stages of Marilyn's life, Casey acted in concert with Betsy, Martin, Lewis, and Irving to transfer all of the remaining assets out of the QTIP Trust to prevent them from passing to the Fund.

39.     Casey, Betsy, Martin, Lewis, and Irving lacked authority under the QTIP Trust or the Maurice Revocable Trust to transfer all of the remaining assets out of the QTIP Trust to prevent them from passing to the Fund.

40.     Casey, Betsy, Martin, Lewis, and Irving knew or should have known that they lacked authority under the QTIP Trust or the Maurice Revocable Trust to transfer all of the remaining assets out of the QTIP Trust to prevent them from passing to the Fund.

41.     On information and belief, some or all of the transactions that removed assets from the QTIP Trust, which were assets that should have passed to the Fund, transferred assets to Lewis, Betsy, or other family members and/or other trusts such as the Marilyn A. Cohen Revocable Trust (the "Marilyn Revocable Trust").

### F. Unauthorized Transfers by Irving, Martin, Lewis, or Casey

42.     Just prior to or subsequent to Marilyn's death, on information and belief, Casey, Martin, Lewis, or Irving directed that additional distributions involving approximately $200,000.00 be made from the QTIP Trust's account at Wells Fargo to the Marilyn Revocable Trust in order to avoid such funds from being distributed to the Fund.

43.     Casey, Martin, Lewis, and Irving lacked authority under the QTIP Trust or the Maurice Revocable Trust to direct that additional distributions involving approximately $200,000.00 be made from the QTIP Trust's account at Wells Fargo in order to avoid such funds from being distributed to the Fund.

44. Casey, Martin, Lewis, and Irving knew or should have known that they lacked authority under the QTIP Trust or the Maurice Revocable Trust to direct that additional distributions involving approximately $200,000.00 be made from the QTIP Trust's account at Wells Fargo in order to avoid such funds from being distributed to the Fund.

## Count I
### Breach of Fiduciary Duty – QTIP Trust
### (Martin and Lewis)

45. The Foundation hereby re-alleges and incorporates by reference the allegations and references contained in the foregoing paragraphs as if fully set forth herein.

46. Martin and Lewis, as co-trustees of the QTIP Trust, owed a fiduciary duty to the Fund to act in good faith in administering the QTIP Trust, to exercise reasonable care and skill in administering the QTIP Trust, to act in the best interests of the QTIP Trust's beneficiaries, which included the Fund, and to refrain from deriving any personal advantages at the expense of the QTIP Trust's beneficiaries.

47. Martin and Lewis breached their fiduciary duties by, among other things, allowing funds and assets to be diverted from the QTIP Trust so that they would not pass to the Fund, engaging in transactions involving QTIP Trust funds and assets that were not authorized by the QTIP Trust or the Maurice Revocable Trust, acting contrary to the intentions of the QTIP Trust's settlor, Maurice, and participating in transactions involving QTIP Trust assets that benefited them personally or their families, at the expense of the Fund.

48. As a direct and proximate result of Martin and Lewis's breaches of their fiduciary duties, the Foundation has suffered damages.

## Count II
### Accounting – QTIP Trust
### (Martin and Lewis)

49.     The Foundation hereby re-alleges and incorporates by reference the allegations and references contained in the foregoing paragraphs as if fully set forth herein.

50.     The Court should compel Martin and Lewis to make a complete accounting to the beneficiaries of the QTIP Trust concerning the QTIP Trust's assets, income, and disbursements of assets and their administration of the QTIP Trust.

## Count III
### Aiding and Abetting Breach of Fiduciary Duty – QTIP Trust
### (Martin, Lewis, Betsy, and Casey)

51.     The Foundation hereby re-alleges and incorporates by reference the allegations and references contained in the foregoing paragraphs as if fully set forth herein.

52.     Lewis knew of Martin's breaches of his fiduciary duties and actively participated in Martin's breaches of his fiduciary duties in such a manner that he did not act in good faith.

53.     Martin knew of Lewis's breaches of his fiduciary duties and actively participated in Lewis's breaches of his fiduciary duties in such a manner that he did not act in good faith.

54.     Betsy and Casey knew of Martin and Lewis's breaches of their fiduciary duties and actively participated in their breaches of their fiduciary duties in such a manner that Betsy and Casey did not act in good faith.

55.     As a direct and proximate result of Lewis, Martin, Betsy, and Casey's aiding and abetting Martin and Lewis's breaches of their fiduciary duties, the Foundation has suffered damages.

### Count IV
### Civil Conspiracy to Breach Fiduciary Duty – QTIP Trust
### (Martin, Lewis, Betsy, and Casey)

56. The Foundation hereby re-alleges and incorporates by reference the allegations and references contained in the foregoing paragraphs as if fully set forth herein.

57. Martin and Lewis acted in concert with each other, Casey, and Betsy to breach their fiduciary duties to the Fund, or they gave substantial assistance and encouragement to each other to breach their fiduciary duties to the Fund.

58. As a direct and proximate result of Martin, Lewis, Casey, and Betsy's conspiracy to breach Martin and Lewis's fiduciary duties to the Fund, the Foundation has suffered damages.

### Count V
### Breach of Fiduciary Duty – LLL&B Trust
### (Betsy)

59. The Foundation hereby re-alleges and incorporates by reference the allegations and references contained in the foregoing paragraphs as if fully set forth herein.

60. Betsy, as a trustee of the LLL&B Trust, owed a fiduciary duty to the QTIP Trust and its beneficiaries, including the Fund and/or the Foundation, to act in good faith in administering the LLL&B Trust, to exercise reasonable care and skill in administering the LLL&B Trust, to act in the best interests of the LLL&B Trust's beneficiaries, which included the Fund, and to refrain from deriving any personal advantage at the expense of the LLL&B Trust's beneficiaries.

61. On information or belief, Betsy breached her fiduciary duties by, among other things, allowing funds and assets to be diverted from the LLL&B Trust so that they would not pass to the Fund, engaging in transactions involving LLL&B Trust funds and assets that were not authorized by the LLL&B Trust or the Maurice Revocable Trust, acting contrary to the

intentions of the LLL&B Trust's settlor, and participating in transactions involving LLL&B Trust assets that benefited her personally or others, at the expense of the Fund.

62. As a direct and proximate result of Betsy's breaches of her fiduciary duties, the Foundation has suffered damages.

**Count VI**
**Accounting – LLL&B Trust**
**(Betsy)**

63. The Foundation hereby re-alleges and incorporates by reference the allegations and references contained in the foregoing paragraphs as if fully set forth herein.

64. The Court should compel Betsy to make a complete accounting to the beneficiaries of the LLL&B Trust concerning the LLL&B Trust's assets, income, and disbursements of assets and her administration of the LLL&B Trust.

**Count VII**
**Fraud / Tortious Interference with Gift**
**(Martin, Lewis, Betsy, and Casey)**

65. The Foundation hereby re-alleges and incorporates by reference the allegations and references contained in the foregoing paragraphs as if fully set forth herein.

66. Both before and after Marilyn's death, Martin, Lewis, Betsy, and Casey intentionally and unlawfully interfered with the Foundation's remainder interest in the QTIP Trust.

67. Martin, Lewis, Betsy, and/or Casey falsely represented that transfers of assets out of the QTIP Trust were for Marilyn's health, education, support and maintenance when in fact they knew and acknowledged that the true purpose of the transfers was to prevent the assets from passing to the Fund and/or the Foundation.

68. Martin, Lewis, Betsy, and/or Casey effectuated these transfers with the knowledge that they were contrary to Maurice's intentions and to the language of the QTIP Trust

11

or the Maurice Revocable Trust, and that the effect of the transfers would deprive a philanthropic organization of charitable funds to which it was entitled.

69. As a result of Martin, Lewis, Betsy, and Casey's intentional interference with the Fund and/or the Foundation's remainder interest in the QTIP Trust, the Foundation has suffered damages.

## Count VIII
### Unjust Enrichment / Restitution / Constructive Trust
### (Martin, Lewis, Betsy, and Casey)

70. The Foundation hereby re-alleges and incorporates by reference the allegations and references contained in the foregoing paragraphs as if fully set forth herein.

71. Martin, Lewis, Betsy, and Casey have knowingly derived and accepted benefits from the QTIP Trust, the Maurice Revocable Trust, or the LLL&B Trust to the detriment of the Foundation, under circumstances that would make it inequitable for them to retain those benefits.

72. The Court should compel Martin, Lewis, Betsy, and Casey to make restitution to the Foundation for any benefits that they have received – to the detriment of the Foundation – from the QTIP Trust, the Maurice Revocable Trust, or the LLL&B Trust under circumstances that would make it inequitable for them to retain those benefits.

73. The Court should order Martin, Lewis, Betsy, and Casey to hold in constructive trust for the Foundation any benefits that they have received on their own behalf or on behalf of others – to the detriment of the Foundation – from the QTIP Trust, the LLL&B Trust, and/or other trusts under circumstances that would make it inequitable for them to retain those benefits.

WHERFORE, the Foundation respectfully requests that the Court grant the following relief:

A. Enter judgment for the Foundation on all counts in its Complaint;

B. Order the Defendants to pay damages to the Foundation in an amount sufficient to compensate the Foundation for any and all of its losses, plus interest;

C. Order Martin, Lewis, Betsy, and Casey to make restitution to the Foundation for any benefits that they have received on their own behalf or on behalf of others – to the detriment of the Foundation – from the QTIP Trust, the LLL&B Trust, and/or other trusts under circumstances that would make it inequitable for them to retain those benefits.

D. Order Martin, Lewis, Betsy, and Casey to hold in constructive trust for the Foundation any benefits that they have received on their own behalf or on behalf of others – to the detriment of the Foundation – from the QTIP Trust, the LLL&B Trust, or other trusts under circumstances that would make it inequitable for them to retain those benefits.

E. Order Martin and Lewis to make a complete accounting to the beneficiaries of the QTIP Trust concerning the QTIP Trust's assets, income, and disbursements of assets and their administration of the QTIP Trust;

F. Order Martin and Lewis to furnish information to the beneficiaries of the QTIP Trust to the full extent required by principles of law and equity;

G. Order Betsy to make a complete accounting to the beneficiaries of the LLL&B Trust concerning the LLL&B Trust's assets, income, and disbursements of assets and her administration of the LLL&B Trust;

H. Order Betsy to furnish information to the beneficiaries of the LLL&B Trust to the full extent required by principles of law and equity;

I. Award the Foundation attorneys' fees and costs; and

J. Award such other and further relief as the Court considers just and proper

**The Foundation hereby demands a trial by jury on all counts so triable.**

        Respectfully submitted,

        THE FPE FOUNDATION,

        By its attorneys,


        /s/ Joseph D. Whelan
        /s/ Matthew H. Parker
        Joseph D. Whelan (BBO# 663248)
        Matthew H. Parker (BBO# 675444)
        WHELAN & SIKET, LLP
        30 Kennedy Plaza, Suite 402
        Providence, RI 02903
        Tel:  (401) 270-4500
        Fax: (401) 270-3760
        jwhelan@whelansiket.com
        mparker@whelansiket.com

DATED:  July 23, 2012